11 So.2d 861

**ELLIS v. STATE.**

**6 Div. 60.**

Supreme Court of Alabama.

Jan. 21, 1943.

Rehearing Denied Feb. 25, 1943.

Beddow, Ray & Jones, of Birmingham, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

THOMAS, Justice.

The indictment was for rape. The verdict of the jury was "guilty as charged" and the punishment was fixed at twenty-five years' imprisonment in the penitentiary. There was notice of appeal and request for the execution of the sentence of the law to be suspended pending such appeal.

The bill of exceptions shows in detail the respective facts attending the parties from the time Miss Phillips, the prosecutrix, entered the automobile of defendant and his companion Kabase, to the time of the rape. It would serve no good purpose to extend these details in the opinion. The testimony of the young woman is in direct conflict with that of the defendant and his companion in the car and at the alleged scene of the crime. Hence a jury question was presented as to the guilt or innocence of the defendant. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. The other witnesses tend to corroborate Miss Phillips.

The appellant contends that prejudicial error resulted in rulings of the court and in argument of counsel for the state. It is insisted that error intervened in argument of the state's counsel of an inflammatory type against the defendant that should have warranted a mistrial, which was moved for by defendant and overruled by the trial court.

The testimony for the state tended to show that the prosecutrix made a loud outcry at or immediately before her attack and the outcry was heard by three witnesses, ladies employed in the Birmingham Tuberculosis Sanitarium, near which place the rape occurred. After the consummation of the act in controversy, the prosecutrix escaped to a negro house nearby and the defendant and his companion sought her there without avail. The testimony of the witnesses from the sanitarium and that from the witnesses in the negro house corroborated the testimony of the prosecutrix.

The other testimony for the state corroborated the evidence as to the arrival of prosecutrix at the house of Mr. Prater; that she immediately complained of being ravished; police officers were called, who carried prosecutrix to the Hillman Hospital where she was examined by witnesses who testified on the trial as to bruises and scratches upon her body. The evidence further shows the examination of Miss Phillips by a physician at her home later in the day, and to the effect of scratches on her lower limbs, a redness upon her forehead and breast, and in and about her privates.

The defendant, in a word, went to the jury upon the testimony of witness Kabase and his own testimony, with the corroborating testimony of a policeman who examined the body of the defendant after the alleged event and found the absence of marks and injuries upon his person. The girl in question had testified that she had made an active resistance to his approaches as she was able to make and failed to prevent the accomplishment of his rape; that she not only made outcry, but fought him as hard as she was enabled to under the circumstances and as she was held by the defendant.

By virtue of the statutes, no objection must be allowed to the competency of a witness because of his conviction for any crime except perjury or subornation of perjury, but if he has been convicted of a crime involving moral turpitude the fact may be proven and it goes to his credibility. It is further provided by statute that a witness may be examined touching his conviction for crime and his answer may be contradicted by other evidence. Code 1940, T. 7, §§ 434, 435. This statute was from the Act of 1883, p. 146 and thereafter codified with the new Section 1796 in the Code of 1896, after the decision in Murphy v. State, 108 Ala. 10, 18 So. 557.

It is noted that the statute authorizing evidence of a witness convicted of an offense involving moral turpitude does no more than authorize evidence of the fact of conviction for such offense as it may affect the weight of his evidence. It has been held that it is not permissible to go into the details of such offense. Waters v. State, 117 Ala. 108, 22 So. 490; Latikos v. State, 17 Ala.App. 655, 88 So. 47. Prior to this statutory authorization of such discrediting evidence of witness' conviction of an offense involving moral turpitude, such conviction could only be given in evidence by a duly authenticated record of the conviction of defendant or a properly established copy thereof, and may not be proven by parol evidence in the first in-

stance. Murphy v. State, 108 Ala. 10, 18 So. 557.

It has been held proper to ask a witness whether he pleaded guilty of petit larceny (Hutchens v. State, 207 Ala. 126, 92 So. 409), and whether he had received a sentence for stealing chickens (Wells v. State, 131 Ala. 48, 31 So. 572; Suttle v. State, 18 Ala.App. 411, 92 So. 531), and whether he served time for larceny (Orr v. State, 225 Ala. 642, 144 So. 867), and whether he served time in the penitentiary for murder (Rountree v. State, 20 Ala.App. 225, 101 So. 325), and whether he had done time in the penitentiary. To further illustrate the cases under the statute, it has been held that the discrediting of a witness by showing his conviction of a crime does not authorize the reception of evidence indicating his innocence of the charge, or showing the particulars of the offense (Waters v. State, 117 Ala. 108, 22 So. 490; Fuller v. State, 147 Ala. 35, 41 So. 774; Kendrick v. Cunningham, 9 Ala.App. 398, 63 So. 797), or showing that the witness never paid the fine or performed the hard labor sentence imposed upon him. Formby v. Williams, 17 Ala.App. 24, 81 So. 360. However, in support of the credibility of the witness, evidence that he was youthful when convicted is admissible. Hale v. State, 10 Ala. App. 22, 64 So. 530, which was not passed upon by this court.

The defendant as a witness in his own behalf and on cross-examination by the state was asked if he had been convicted of grand larceny and answered, "No sir. I was not convicted of larceny." The witness then testified: "You ask me if on December 19, 1933, if I wasn't sentenced to one year and one day, to one year and seven months out of this court here on a charge of larceny and burglary, and if I wasn't put on probation, that is if my sentence wasn't suspended by the court pending my future good behavior and observance of the law, and if I was put on a suspended sentence on that conviction, and my answer is, no sir, I wasn't, not under that conviction."

The following occurred:

"The witness was then asked the following question:

"Q. Your answer was that you were not put on probation or recognized your sentence suspended on that conviction? Now, you were convicted though on the date I mentioned weren't you in December, 1933?

"Counsel for the defendant objected to the question unless the Solicitor asked the question in the language in which the predicate must be laid, and unless the question is asked with respect to an offense involving moral turpitude, and that the witness is being asked if he wasn't convicted on that date for burglary and whether he was convicted for larceny, grand and petit, and the witness answered, no; and counsel for the defendant objected to the question on the ground that it assumes it was an offense involving moral turpitude.

"The Court overruled the objection of the defendant, to which ruling of the Court, the defendant then and there, duly and legally reserved an exception.

"The witness answered:

"Yes sir, but not on both charges.

"Continuing the witness testified as follows:

"It was the charge of buying ten dollars worth of stolen property. I was convicted in 1933. And the charge was buying, receiving and concealing stolen property, not knowing it to be stolen, and I was sentenced to one year and one day to one year and seven months in the penitentiary. I think I plead guilty to buying and receiving. That's all the Solicitor's office read to me, when they told me if I would plead guilty they would give me a year's probation. I was sentenced to the penitentiary for one year and one day to one year and seven months, and that sentence was suspended pending my good behavior."

The witness was then asked by state's solicitor:

"You were charged with breaking into a Hill store, one of Hill's stores?

"The witness answered:

"No, sir." (The court misunderstood the question and then followed an objection by counsel for defendant and the ruling of the court was): " * * * Mr. Long has a right to ask that question, I think, and I overrule the objection and will let the question be asked, whether he was convicted of breaking into Hill's store."

There was further objection and the court said: "Of course, my statement, gentlemen of the jury,—that question that was asked the witness by Mr. Long, in substance whether or not the witness here, who is also the defendant, wasn't convicted of breaking into Hill's store,—I instruct you that that question, of course, is

not evidence. I think you understand that anyway. Anyway the evidence comes from the witness stand, but I also instruct you that in the Court's opinion it wasn't an improper question and that the witness should answer that question, and I overrule the objection to it."

To this ruling of the court defendant's counsel replied: "I want to object to the Court's statement that that is a proper statement, and I don't agree with the Court's statement that that is a proper question, and we except to the Court's explanation that that was a proper question, because, Judge, I don't think your Honor understood the question, which couldn't have been a proper question; and I know your Honor thinks it was because you didn't understand it. And we except to the statement of the Court. * * *."

Defendant's counsel moved for a discontinuance of the trial, which motion was disallowed. The court said: "Of course, the law provides that you can examine this witness touching his conviction for crime, and I think the question asked is an examination of the witness properly under the section of the code, and I think you have a right to ask that question. I want to say that Mr. Beddow is well within the rights in objection and I hope I haven't unduly criticized him, because he has been very respectful and honorable in this Court, and I don't want to do anything to make him feel hurt, at the same time I am ruling, and, if in error, I want to be sure he can get an exception, so that he can take his case up and protect himself. I want the case reversed if I make a mistake. I want to do what is right. Mr. Beddow, I'll have to overrule your objection, and, if wrong, give you any grounds you may think of, give you the right to assign them later on."

In this ruling of the court there was no reversible error. The question, objections and rulings thereon were not within our cases authorizing a discontinuance. Moulton v. State, 199 Ala. 411, 74 So. 454; Anderson v. State, 209 Ala. 36, 95 So. 171. However, the question using the word "charged" instead of the word "convicted", causing the foregoing objections, rulings and charges was withdrawn and the solicitor asked the defendant, as a witness in his own behalf: "Now, I will amend that question and ask him to this extent, Was you convicted on an indictment wherein it was charged in two counts, one for burglary,—three counts,—one for burglary, one for larceny, and one for buying and receiving stolen property; wasn't that the case that you was convicted in and charged, wherein you were charged with breaking into the Hill, one of the Hill Grocery Stores?"

The defendant's counsel said: "We object to that", and the Court said: "Sustain the objection. It is what he was convicted for, not what he was charged with. Sustain." And then the following ensued:

"Mr. Beddow: And, Judge, I ask your Honor to instruct the jury—

"The Court: I told the jury questions of counsel is not evidence. The jury I think understands.

"Mr. Beddow: We reinterpose our objection on the same grounds, and ask your Honor to declare a mistrial.

"The Court: Overruled.

"Mr. Beddow: We except."

The record has been read and considered and in this ruling of the court in declining to enter a mistrial there was no error.

■ The witness continued, saying: "I know Mr. Robert McAdory, the Solicitor of this circuit. Yes sir, I was convicted in this court, in the circuit court here in this county on the 22nd day of April, 1939, on three charges of forgery. I wasn't drunk this night that I had this young lady up in that hospital grounds. I saw the young lady in the light where there was plenty of lights. I don't exactly remember how she was dressed. * * *."

State's counsel asked the defendant the following question: "I will ask you to look at those two ladies' slippers, slippers made of cloth, the top part with openings in the toe of both of them, with a brown leather striped stitch from the opening of the toe up to the top of it, and the slipper being colored brown, green and white striped, and tell the jury if those aren't the slippers or slippers appearing like that that this young lady was wearing this night you had her out there on the dance floor."

There was objection and argument by the respective counsel. The witness answered as to the ladies' slippers and as to whether he identified them as being worn by prosecutrix and said: "I couldn't say that. I do not know. No sir."

In this there was no error to reverse.

Continuing the cross examination, the state's solicitor said to defendant's coun-

sel: "If you haven't seen this look at it. (Docket sheet handed to Mr. Beddow)."

■ Thereupon the court interjected a further statement to the jury, as follows:

"I want to state to the jury with reference to the questions Mr. Long asked the defendant here as a witness, that question that had reference to breaking into a Hill's store. I don't mean the defendant did or didn't; I am just trying to direct your attention to that question. I don't want you gentlemen to be influenced by that question. Of course, that wasn't evidence, that was a question that was asked by Mr. Long and wasn't evidence at all; and the defendant, I believe, I don't know just what his answer was to that,—you remember that, of course,—I don't want you to consider that as evidence or to let that affect you one way or the other in the trial of this cause, or to prejudice the defendant at all. The Solicitor was asking the witness, this defendant, regarding any previous convictions, if any, of a conviction for a violation of the criminal law. That's in explanation. The Solicitor had a right to ask him about that, but I don't want you to let that fact, the fact that that question was asked by the Solicitor, have any effect on you at all in this case for any purpose at all. The law is that if the defendant was convicted of a crime involving moral turpitude, then that would go to the credibility, you would consider that in determining how much weight you would give his testimony or the evidence, any effect, on this particular charge against him; and I ask for you not to be influenced by that at all. I say that to you at this time.

"Mr. Beddow: We want to reserve an exception to the statement of the Court.

"The Court: You may except to what I had to say."

In this further explanation of his former ruling or instruction to the jury, there was no error. Thereupon the solicitor asked the witness: "At this time, your Honor, the State offers in evidence as State's Exhibit the trial docket sheet of the criminal division of the Circuit Court, case No. 67385, wherein it shows that J. D. Ellis was the defendant charged with burglary, grand larceny, buying, receiving or concealing stolen property, and the defendant's plea of guilty to the order written up by the Court showing what he pled guilty to, and the date of the conviction and the sentence.

That's the official record and we offer that as State's Exhibit."

■ We find no reversible errors in these rulings. The court had limited the purpose of this evidence as it affected his credibility as a witness. Rollings v. State, 136 Ala. 126, 34 So. 349.

■ The introduction of the trial docket in this case was merely cumulative evidence of an admitted fact. It is true this court said: "The trial docket is not a record, and the memoranda [the judge's bench notes] entered thereon by the judge operated only as a direction to the clerk as to what judgments and orders shall be entered on the court's records." Wynn et al. v. McCraney et al., 156 Ala. 630, 46 So. 854; Calvert v. State, 26 Ala.App. 189, 155 So. 389. When a witness denies his conviction of the offense inquired about, it can be proven by the court record of his conviction or by a properly certified copy thereof, as required by law. Childers v. Holmes, 207 Ala. 382, 92 So. 615. It was collateral evidence that touched the evidence given by defendant as a witness in his own behalf. Wilson v. State, Ala.Sup., 8 So.2d 422; Code 1940, T. 7, § 393. The paper in evidence was a record of a public officer of the conviction and judgment or order of imprisonment in the penitentiary and the suspension thereof inquired about, within the provisions of the statute. Code 1940, T. 7, § 393; Wilson v. State, supra.

■ The defendant was asked by his counsel, "If at that time you were 17 years of age," to which the state objected. The court sustained the objection. Under the whole record, if there was error in this ruling, it was error without injury. However, it was a leading question and the court committed no error in sustaining objection thereto.

As to this the record shows:

"Mr. Beddow: Did you admit the trial sheets?

"The Court: I do. * * *

"The Court: He can read it without a comment.

"Mr. Beddow: We except.

"Mr. Long: (Continuing) in pen and ink ind. and writing underneath that in the same column, B GL BRCSP, bond $500, 3-15-1933. June 19, 1933 Passed by the defendant, signed H. P. Heflin, Judge. October 24, 1933, Passed by the defendant, H. P. Heflin, Judge. 1-2-34, Plea of guilty

as charged in the third count of the indictment, value of the property stolen fixed at $10. Returned to owner,—no restored to owner. One year and one day to one year and seven months in the penitentiary, on the recommendation of Solicitor McAdory, it looks like, John P. McCoy, Judge. Now the sentence, in pen and ink, 1-2-34, Judgment and sentence that the defendant be imprisoned in the penitentiary for a term of one year and one day, which is the minimum sentence, and for a term of one year and seven months, which is the maximum sentence, signed J. P. McCoy, Judge. Any writing over on the back—

"The Court: So, I wouldn't refer to that. It is a question whether or not there was a conviction. Don't pay any attention to what is on the other side of the page, because that is something that is not pertinent to this case, hasn't anything to do with this case. It is whether he was convicted or not."

To the ruling of the court as to this, Mr. Beddow excepted.

■■■ In the first question of appellant's counsel was the attempt to show particulars of the offense of which he was convicted. This was contrary to the rule that obtains as to such evidence tending to affect the credibility of the defendant as a witness. Waters v. State, 117 Ala. 108, 22 So. 490; Fuller v. State, 147 Ala. 35, 41 So. 774.

■■■ In a prosecution for rape, it is permissible to allow evidence of the complaint of prosecutrix. White v. State, 237 Ala. 610, 148 So. 388; Mickle v. State, 226 Ala. 616, 148 So. 319; Daniels v. State, Ala.Sup., 11 So.2d 756.

■■■ The place where the alleged crime was committed being identified by prosecutrix, it was competent to show the condition of the ground thereat. Roberts v. State, 122 Ala. 47, 53, 25 So. 238. It was a proper rendition of fact that was within the res gestae of the offense. Louisville & Nashville R. Co. v. Hayward, 201 Ala. 9, 75 So. 22.

■■■ The application of the rule of res gestae depends on whether the circumstances are such that it may be affirmed as reasonably certain that "(1) the declarations were produced by, or were instinctive of the occurrences to which such exclamations, declarations or outcry relate, or which give character or characterize the act or principal fact for decision, rather than a retrospective narrative of such occurrences; (2) the declarations must be contemporaneous with the main facts and so closely connected with it as to illustrate its character." Kiel v. State, 236 Ala. 585, 184 So. 210, 211; Sandlin v. State, 25 Ala.App. 311, 146 So. 82.

■■■ Antecedent circumstances tending to shed light on the transaction or elucidate the facts or show preparation to commit the crime are always admissible in evidence. Harden v. State, 211 Ala. 656, 101 So. 442; Beaird v. State, 219 Ala. 46, 121 So. 38.

In a recent well reasoned case (Gandy v. State, 29 Ala.App. 485, 198 So. 265, 266, certiorari denied 240 Ala. 202, 198 So. 267), the Court of Appeals had this to say in dealing with a conspiracy to commit rape:

"The theory of the State upon the trial of this case in the court below, made known to the court, was, that a conspiracy to commit the offense complained of was entered into by the appellant, and two others, his companions on the occasion in question; and we find from the undisputed testimony this position was well taken and fully sustained. The law as to this is, whether in fact the violence was done by one, or more than one; whether they went there with a common purpose to do violence, or to see it done, or to aid or encourage the doing of it, or to lend assistance should it become necessary; each and all of these were proper inquiries for the jury, and the testimony justified their submission to that body. So, if, being present with or without preconcert, they entered into a common illegal purpose, and one or more of them did the deed of violence, and the others were present, aiding, abetting, encouraging, sanctioning, or giving countenance to the unlawful act, or ready to lend assistance if it should become necessary, and the jury, by the proper measure of proof, find either one of these categories to be true, then if the actor or actors be found guilty, the others are also guilty. Hence it is that, when there is testimony, sufficient in the opinion of the presiding judge to show a prima facie case of conspiracy, or community of purpose, then the acts of each may be proved on the trial against all or any number of the alleged conspirators; and if the jury find that there was such conspiracy, or common purpose, then the act of each

participant, done or sanctioned by one in aid of the common purpose, becomes the act of all in its criminating effect."

This court has dealt with arguments of counsel in a long line of decisions covering a century of judicial pronouncements. It is needless to cite but the later cases. Cross v. State, 68 Ala. 476; Moulton v. State, 199 Ala. 411, 74 So. 454; Anderson v. State, 209 Ala. 36–43, 95 So. 171; American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507; Bachelor v. State, 216 Ala. 356, 113 So. 67; Bridges v. State, 225 Ala. 81, 124 So. 56–61; Canty v. State, 238 Ala. 384, 191 So. 260; Peterson v. State, 231 Ala. 625, 166 So. 20; Kennedy v. State, 237 Ala. 359, 186 So. 453; Provident Life, etc., v. Downey, 242 Ala. 482, 7 So.2d 17; Alabama Power Co. v. Goodwin, 210 Ala. 657, 99 So. 158.

In Anderson v. State, 209 Ala. 36, 42, 95 So. 171, 178, it is said: "That no iron-clad rule exists by which the prejudicial qualities of improper remarks or argument of counsel can be ascertained in all cases, much depending upon the issues, parties, and general circumstances of the particular case. Moulton v. State, 199 Ala. 411, 74 So. 454 * * *."

■ The statements complained of on this appeal were the mere expressions of opinion of state's counsel, and were deductions and conclusions based upon the evidence in the case. In the statements complained of there was no unwarranted appeal to prejudice, nor were there any substantive outside statements of facts that would reverse. Where there was a dispute of counsel as what the evidence was, the court referred the same to the recollection of the jury.

In Cross v. State, 68 Ala. 476, 484, in dealing with improper argument of counsel, Judge Stone said: " * * * The statement must be made as of fact; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury; or the case is not brought within the influence of this rule. To come within the last clause above, namely, where the natural tendency is to influence the finding of the jury, the case must be clear and strong. We would not embarrass free discussion, or regard the many hasty or exaggerated statements counsel often make in the heat of debate, which can not, and are not expected to

become, factors in the formation of the verdict. Such statements are usually valued at their true worth, and have no tendency to mislead. * * *"

There are several arguments of counsel for the state to which exception was taken by defendant's counsel and to which we now advert. They do not fall within the several rules that obtain, towit: within the rule of the "race prejudice" cases, nor were they without the evidence, nor were they of such nature as are held to be ineradicable by the ruling of the court excluding the same from the jury. Moulton v. State, 199 Ala. 411, 74 So. 454; Anderson v. State, 209 Ala. 36, 95 So. 171.

Counsel for appellant insists that the argument of the solicitor to the jury to the effect that he would see that the coconspirator was prosecuted was error in that it amounted to a promise to the jury. Counsel further insists that the remark was so grossly improper and illegal as to warrant a reversal and as a result moved for a mistrial or discontinuance of the cause.

Analogy is suggested in the case of Yontz v. Commonwealth, Court of Appeals of Kentucky, 66 S.W. 383, 384. In that case indictments charging Yontz and several others with murder alleging that he was aided by his codefendants, one of which was Reynolds, the remarks of the state's attorney were urged as error. We would not go as far as the Kentucky Court. It is, however, interesting to note that the court therein observed:

"The most important of these alleged errors was that the commonwealth's attorney, in his closing address to the jury, used this language: 'Gentlemen of the jury, why did not Morgan Reynolds submit to arrest and stand trial, if he was not guilty? If he was not guilty, he would have said so to his mother and sisters.' As Reynolds was not on trial, there was no occasion for the commonwealth's Attorney to have made this remark. But we are unable to see how it could have affected prejudicially the rights of the defendant."

■ The Yontz case bears a marked analogy to the case at bar where the remark was of a coconspirator in the crime. This remark was not a promise to the jury by the solicitor in a corrupt sense. It was merely by way of argument and referred to a coconspirator in the crime who was a witness for the defendant in the instant

case. This matter has been considered by the court and held not to warrant a reversal. Daniels v. State, supra.

■ All that was said and done by the prosecutrix, the defendant and Kabase, was within the res gestae of the crime charged and was therefore competent evidence and warranted comment by counsel to the jury. It was a mere assertion of the impartial treatment to be accorded to conspirators by the official.

■ The argument of prosecuting attorney to which reference has been made, towit, "I promise you before God and in your presence that I will see that Kabase is prosecuted," is urged as reversible error by appellant's counsel. It is insisted that this argument falls within the class of arguments, the injurious effect of which cannot be eliminated by proper instructions of the court to the jury, and would be sufficient to reverse if no objection or exception had been taken, and if no motion for a new trial had been made. It is true that the state does not desire convictions of persons charged with crime unless the jury is convinced beyond a reasonable doubt that the defendant is guilty as charged, unaided by improper appeals of prosecuting officials or by ex parte statements of facts not in evidence. Merrell v. State, 21 Ala.App. 38, 104 So. 881; Wilbanks v. State, 28 Ala.App. 456, 185 So. 770. In each of the cases last cited from the Court of Appeals the argument of counsel contained statements of facts not within the evidence. Such is not the case here. The solicitor was within the record or within the reasonable inferences thereform.

■ In response to objection to this argument by defendant's counsel last stated in reference to the trial of the coconspirator in this crime, after having overruled defendant's motion for a mistrial, the defendant reserved exception, and the court said to the jury: "Sustained and I exclude that from the jury and ask you not to consider it. In case of appeal,— the State can't appeal." And to this instruction to the jury, exception was duly reserved. The argument of solicitor to which exception was taken was not within our race or class prejudice or ineradicable error cases. Moulton v. State, supra; Anderson v. State, supra. The court duly instructed the jury not to consider that remark of the solicitor as to what

he would do as to prosecution of coconspirator in the crime of rape.

Several other remarks and arguments of the solicitor before the jury are assigned as reversible error and it is urged that they warranted the entry of a judgment of mistrial by the circuit court, as moved for by defendant's counsel. We have examined such remarks as carefully as the ones hereinbefore set out, and find no sufficient grounds for reversal, under the ruling of the court and the definite instructions given to the jury.

The punishment of the defendant was fixed by the jury at twenty-five years in the penitentiary when it had the prerogative of imposing the full sentence of the law upon him. This impresses one that the jury were not improperly stirred by arguments of the state's attorney to a verdict not warranted by the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

All the Justices concur.